FILED ___ ENTERED
___ LODGED ___ RECEIVED
JUL 0 1 2019
AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TAVON HUNT,

    Plaintiff,

v.

JEREMY JOHNSTON, *et al.*,

    Defendants.

Civil Action No. RDB-17-3481

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

This case[1] arises from allegations that Baltimore City police officers unlawfully stopped Plaintiff Tavon Hunt ("Hunt" or "Plaintiff") on August 16, 2015, unlawfully searched his vehicle, and used excessive force against him. Plaintiff filed a Complaint on November 22, 2017 against the City of Baltimore, Police Officer Jeremy Johnston ("Johnston"), John Doe Officers 1-5, and John Doe Supervisors 1-10, alleging violations of his constitutional rights and making a claim for money damages under 42 U.S.C. §§ 1983 and 1988. (Compl., ECF No. 1.) Upon notice that the Complaint was filed incorrectly, Plaintiff filed a First Amended Complaint (ECF No. 4) on November 29, 2017, changing the unnamed Defendants in the caption to John Doe Officers 1-25 and John Doe Supervisors 1-20, although not adding or changing the allegations against any of the Defendants. The City of Baltimore was voluntarily dismissed from this action on February 12, 2018. (ECF No. 10.)

---

[1] On July 18, 2018, this case was reassigned from the Honorable Marvin J. Garbis to the undersigned.

On April 13, 2018, this Court granted in part Defendant Johnston's dismissal motion, allowing Plaintiff the opportunity to file an amended complaint, by May 14, 2018, that included a statement of what was specifically being claimed against Defendant Johnston. (ECF No. 14.) On May 15, 2018, Johnston filed a renewed dismissal motion in light of Plaintiff's failure to file an amended complaint within the allowed timeframe. (ECF No. 15.) That same day, Plaintiff's counsel responded with a proposed Second Amended Complaint seeking the Court's indulgence due to an unforeseen error on counsel's part that prevented its timely filing. (ECF No. 16.) Johnston objected, but after a telephone conference with Judge Garbis of this Court, the parties agreed to proceed on the Second Amended Complaint. (ECF No. 18.) This two-count complaint makes allegations against only Johnston and John Doe Officers 1-2: (1) an excessive force claim, and (2) an unlawful detention claim. (ECF No. 19.)

Now pending before this Court are five motions: (1) Defendant's Motion to Deem Requests for Admission be Admitted (ECF No. 24); (2) Defendant's Motion for Partial Summary Judgment (ECF No. 25); (3) Plaintiff's Motion to Amend Scheduling Order (ECF No. 28); (4) Defendant's Second Motion for Partial Summary Judgment (ECF No. 34); and (5) Plaintiff's Motion for Leave to Amend Complaint (ECF No. 41). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018).

For the reasons that follow, this Court shall GRANT Defendant Johnston's motions for summary judgment (ECF Nos. 25, 34) and DENY Plaintiff's Motion for Leave to Amend Complaint (ECF No. 41) because any amendment in a proposed third amended complaint would be futile. Defendant's Motion to Deem Requests for Admission be Admitted (ECF

No. 24) and Plaintiff's Motion to Amend Scheduling Order (ECF No. 28) shall be DENIED AS MOOT.

## BACKGROUND

On August 16, 2015, Hunt was driving to his mother's[2] house with his girlfriend and a child in the vehicle. (Second Am. Compl. ¶ 10, ECF No. 19.) He was driving a 2002, Mercedes CLK 320 that had tinted windows darker than legal limits.[3] (Dep. Tr. 36, 37, 58, ECF No. 34-1.) Hunt became aware that he was being followed by police officers. (*Id.* at 52-54.) When Hunt arrived at his destination, he parked and exited the vehicle and was immediately approached by the police officers, who requested his license and registration. (*Id.* at 52-53.) In his Second Amended Complaint, now pending before this Court, Hunt alleged that he was in the vehicle, but he complied and exited when the officers demanded he exit the vehicle. (¶ 12, ECF No. 19.)

Hunt informed the officers that his license and registration were in the vehicle, and one of the police officers retrieved the license from the vehicle. (Dep. Tr. 54-55, ECF No. 34-1.) Hunt described the police officer as an African American with a goatee and dark complexion. (*Id.* at 56.) During the encounter, Hunt was given a citation for failure to display his driver's license and a repair order for his window tinting.[4] (*Id.* at 60.) The same police officer frisked

---

[2] In his deposition, Hunt indicated that it was his girlfriend's mother's house. (Dep. Tr. 51-52, ECF No. 34-1.)
[3] Under Maryland law, sedans (such as Hunt's) must allow more than 35% of light into the vehicle. *See* Md. Code, Transportation Article, § 22-406. Hunt admitted that the rating of his window tinting was 20%, which by any objective measure, was much darker than legally permitted, and he'd received prior citations requiring him to repair the windows. (Dep. Tr. 58-59, ECF No. 34-1.)
[4] Defendant Johnston testified that he searched the police records and found no police reports or issued tickets. (Johnston Dep. Tr. 6-7, ECF No. 41-1.) Hunt testified that he did not contest the citation and paid the $30 associated fine, but he did not get the window tint fixed. (Dep. Tr. 61-62, ECF No. 34-1.) Hunt stated

3

Hunt and searched his vehicle. (*Id.* at 56-57.) In his complaint, Hunt alleged that the frisking was excessively aggressive, and his genitals were groped, even though he had not resisted or displayed any threatening behavior. (Second Am. Compl. ¶¶ 14, 17, 19, ECF No. 19.) Hunt indicated that the officer told him that they had received a call about suspicious activity in the neighborhood. (Dep. Tr. 57, ECF No. 34-1.) After Hunt signed the citations, he was free to leave. (*Id.* at 66.) A part of the encounter was video recorded by Hunt's girlfriend on her cell phone. (*Id.* at 57, 64, 68-69, 71, ECF No. 34-1; ECF No. 25-1.) Hunt agrees that it is apparent from the video that the officer that frisked him and issued the citations was not the named Defendant Johnston, who is a fair-skinned Caucasian man and had no physical interaction with Hunt. (*See* ECF No. 25-1, ECF No. 28.)

On November 22, 2017, Hunt filed a Complaint against the City of Baltimore, Jeremy Johnston, John Doe Officers 1-5, and John Doe Supervisors 1-10, alleging violations of 42 U.S.C. §§ 1983, 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. (ECF No. 1.) The Complaint included four causes of action: (1) Count I – Violation of Civil Rights under 42 U.S.C. § 1983 (Municipal Liability) against the City of Baltimore; (2) Count II – Violation of Civil Rights under 42 U.S.C. § 1983 (Fourth and Fourteenth Amendments – Supervisory Violations) against the Defendant Supervisors; (3) Count III – Violation of Civil Rights under 42 U.S.C. § 1983 (Fourth and Fourteenth Amendments – Excessive Force) against the Individual Defendant Officers; and (4) Count IV – Violation of Civil Rights under 42 U.S.C. § 1983 (Fourth Amendment – Failure to Intervene)

---

that he provided his citations to his counsel, but they have not been produced to Defendant Johnston. (*Id.* at 62-64; *see* Def's. Second Mot. for Partial Summary Judgment 5, ¶ 8 n. 3, ECF No. 34.)

against the Individual Defendant Officers. Hunt's First Amended Complaint, filed on November 29, 2017 in response to a correction notice, was substantively the same, although he modified the unnamed Defendants to John Doe Officers 1-25 and John Doe Supervisors 1-20. (ECF No. 4.)

On February 2, 2018, the City of Baltimore filed a motion seeking to dismiss the claim against it for failure to state a claim upon which relief could be granted. (ECF No. 7.) In response, Hunt voluntarily dismissed the City of Baltimore as a Defendant. (ECF Nos. 10, 11.)

On February 2, 2018, Defendant Johnston also filed a motion seeking dismissal, or in the alternative for more definite statement, because there were no facts alleged to link him with the Complaint's claims. (ECF No. 9.) On April 17, 2018, Judge Garbis of this Court granted Johnston's dismissal motion in part. (ECF No. 14.) Under the circumstances, this Court found it appropriate to require Hunt to file an amended complaint that stated more clearly what was being claimed against Johnston. (*Id.*) This Court ordered Hunt to file the amended complaint by May 14, 2018 or all claims against Johnston would be dismissed with prejudice. (*Id.*) After Hunt failed to meet the ordered deadline, on May 15, 2018, Johnston filed a renewed dismissal motion seeking dismissal with prejudice. (ECF No. 15.) An immediate response from Hunt's counsel requesting this Court's consideration, due to an unforeseen error on counsel's part, led to a telephone conference and this Court's Order (ECF No. 18)[5] on June 27, 2018 accepting the proposed Second Amended Complaint for filing and

---

[5] Signed by Chief Judge James K. Bredar.

dismissing Johnston's renewed dismissal motion. The Second Amended Complaint, the operative Complaint, is filed against Johnston and John Doe Officers 1-2 and contains two causes of actions: (1) Count I – Violation of Civil Rights under 42 U.S.C. § 1983 (Fourth and Fourteenth Amendments – Excessive Force); and (2) Count II – Violation of Civil Rights under 42 U.S.C. § 1983 (Fourth Amendment – Unlawful Detention). (ECF No. 19.)

On July 31, 2019, Johnston answered the Second Amended Complaint and a Scheduling Order was issued. (ECF Nos. 20, 21.) The deadline for requests for modification of the initial Scheduling Order was set for August 14, 2018 and moving for joinder or additional parties and amendment of pleadings was set for September 14, 2018. (ECF No. 21.) The discovery deadline was set for December 13, 2018. (*Id.*)

On September 25, 2018, Johnston filed Defendant's Motion to Deem Requests for Admission be Admitted (ECF No. 24) due to Hunt's failure to timely respond to Defendant's First Requests for Admissions, which had been served on August 8, 2018. The next day, September 26, 2018, Johnston filed a motion for partial summary judgment, seeking dismissal of the excessive force claim against him on the basis that the video evidence clearly revealed he had not participated in any frisk. (ECF No. 25.) Although Hunt had been informed of the mistaken identity issue by emails on July 25 and 31, he failed to voluntarily dismiss the claim. (*Id.* at 5.)

Hunt did not respond to either of Johnston's motions until October 10, 2018, at which time he also filed a motion seeking to amend the scheduling order. (ECF No. 28.) Hunt contends that his counsel asked Defendant's counsel to identify the other officers in the video so that they could be properly named in the complaint, but the names were not provided until

6

September 25, 2018, which was eleven days after the Scheduling Order deadline for amendment of pleadings. (*Id.* at 1.)

On October 15, 2018, Defendant Johnston filed a second motion for summary judgment, this time seeking dismissal of the unlawful detention claim because it has no basis in fact or law as evidenced by Hunt's deposition testimony. (ECF No. 34 at 1.) Finally, on January 11, 2019, Hunt filed a motion seeking to file a third amended complaint. (ECF No. 41.) In his proposed third amended complaint, Hunt seeks to replace the unnamed officers (John Doe Officers 1-2) with named Defendants and remove Johnston from the excessive force claim in Count I. (*Id.* at 41-3.)

## STANDARDS OF REVIEW

### I. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims

and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 572 U.S. 650, 656-59 (2014).

To survive summary judgment, a party responding to a motion for summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). It must submit evidence that is "significantly probative" to survive summary judgment. *Anderson*, 477 U.S. at 249-50.

## II. Motion to Amend

A plaintiff may amend his or her complaint once as a matter of course before a responsive pleading is served, or within twenty-one days of service of a responsive pleading or motion under Federal Rule of Civil Procedure 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a). While Rule 15(a) requires that leave "shall be freely given when justice so requires," *id.*, a district court may deny leave to amend "when the amendment would be

8

prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). An amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). As this Court has repeatedly explained, an amendment is insufficient or frivolous if it would not survive a motion to dismiss. *See, e.g.*, *Whitaker v. Ciena Corp.*, RDB-18-0044, 2018 WL 3608777, at *3 (D. Md. July 27, 2018) (citing *Tawaab v. Virginia Linen Service, Inc.*, 729 F. Supp. 2d 757, 770 (D. Md. 2010)).

## ANALYSIS

### I. Summary Judgment

Johnston seeks summary judgment in his favor on both claims in the operative complaint. (ECF Nos. 25, 34.) There is no dispute that Johnston was not the officer who frisked Hunt. (*See* ECF Nos. 25-1, 28, 41.) Further, Hunt seeks to dismiss Johnston from Count I so that he can correctly name the officer. (ECF No. 41.) Therefore, summary judgment shall obviously be granted to Johnston with regard to the excessive force claim in Count I.

Hunt's claim for unlawful detention in Count II is based on his initial allegations that the defendant officers had no lawful basis to detain him because they had no reasonable suspicion or probable cause. (Second Am. Compl. ¶¶ 28-29, ECF No. 19.) The legality of a traffic stop is evaluated under the two-pronged inquiry announced in *Terry v. Ohio*, 392 U.S. 1 (1968). First, a court determines whether the officer's reason for the traffic stop was legitimate,

and then whether the officer's actions during the seizure were "reasonably related in scope" to the basis for the traffic stop. *United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015) (quoting *United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992)). Although Hunt maintains in the Second Amended Complaint that the stop was unlawful, in his response to the motion, he does not appear to dispute that there may have been legitimate reasons for the traffic stop, namely the improperly tinted windows and the report of suspicious activity in the area. (*See* Pl.'s Resp. 5, ECF No. 36.)

Hunt argues, however, that even if the traffic stop may have been legal, he was not free to leave, and the detention lasted longer than was necessary, given its purpose. (Pl.'s Resp. 3, ECF No. 36 (citing *Glass v. Anne Arundel Cnty*, 716 F. App'x 179, 181 (4th Cir. 2018).) Hunt asserts that he was detained for forty minutes, which was prolonged beyond the reasonable time needed to issue a citation and did not necessitate a full search of his person and vehicle. (*Id.* at 5-6.)

A stop for a traffic violation should "last no longer than is necessary to effectuate th[at] purpose." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (citation omitted). However, the Fourth Amendment does allow for certain unrelated investigations, provided they do not measurably lengthen the detention. *Id.* at 1614-15. Typical inquiries "involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 1615. During an investigatory stop, an officer may conduct a brief frisk or pat-down "reasonably designed" to discover weapons or instruments that could endanger the officers. *See Terry*, 392 U.S. at 29; *see also United States v. Perate*, 719 F.2d 706, 709 (4th Cir. 1983) ("Brief stops in order to determine

the identity of a suspicious individual or to maintain the status quo while obtaining more information are permitted if reasonable in light of the facts known to the officers at the time.").

In this case, the officers were required to search the vehicle to find Hunt's license, and Hunt testified that he did not know where it was in the vehicle. (Dep. Tr. 55, ECF No. 34-1.) The officer reasonably chose to search the vehicle himself rather than allow Hunt to reenter the darkened vehicle. Hunt testified that he was not struck, kicked, punched, subjected to any chemical agent, nor was profanity used. (*Id.* at 67-68.) Furthermore, it is undisputed that he filed no complaints and sought no treatment. (*Id.* at 69.) While Hunt and the passengers were reasonably required to be out of the vehicle, they were not restrained in handcuffs. (*Id.* at 70.) Hunt's girlfriend was not restrained from using her cell phone to video the frisk. Hunt also testified that he was issued two citations (a ticket for failure to display license and a window tag repair order), and that he argued about having to sign them. (*Id.* at 60.) Hunt testified that he was free to leave after signing the citations. (*Id.* at 66.)

Based on Hunt's own testimony and undisputed video evidence, the officers' actions were routine measures under the circumstances, and there is no evidence to suggest that the search exceeded the permissible scope or that excessive force[6] was used. Therefore, summary judgment shall be granted to Johnston with regard to the unlawful detention claim. *See Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001); *see also Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir.1993) ("Where no genuine issue of material fact exists, this Circuit has noted the

---

[6] Whether the force used was excessive depends on whether the officer's "actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Regardless of the officer's name, the facts in this record do not support a claim of excessive force.

affirmative obligation of the trial judge to prevent factually unsupported claims and defenses' from proceeding to trial." (citations omitted)). Further, the Defendant's Motion to Deem Requests for Admission be Admitted (ECF No. 24) is moot in light of summary judgment being granted in Johnston's favor.

## II. Amendment

Hunt seeks this Court's permission to amend his pleadings and file a third amended complaint pursuant to Fed. R. Civ. P. 15. (ECF No. 41.) Hunt asserts that he was unable to properly name the other two potential defendants until Johnston identified them, which did not happen until September 25, 2018. (*Id.* at 2; ECF No. 28 at 1.) After learning the officers' identities, Hunt filed a motion on October 10, 2018 to amend the scheduling order requesting an extension to the deadline for filing an amended complaint since the deadline to amend the pleadings had already passed on September 14, 2018. (*Id.*) In light of Plaintiff's instant motion to amend his complaint for the third time, Plaintiff's Motion to Amend Scheduling Order (ECF No. 28) is deemed moot.

While Rule 15(a) provides that leave to amend shall be freely given "when justice so requires," a motion to amend should be denied when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001). In this case, amendment would be futile. Regardless of the timeliness issues raised by Johnston, even with the proposed amending of the names of the two previously unnamed police officers, the bare allegations of the complaint are insufficient in light of the evidence of record. As described above, neither Hunt's deposition testimony nor the video evidence supports claims

12

of unlawful detention or excessive force. Although Hunt now names the officer who he contends frisked him, the video evidence of the frisk shows a fairly routine pat-down and does not show excessive force. Further, Hunt has acknowledged that he was not struck, kicked, punched, subjected to any chemical agent, nor was profanity used. (Dep. Tr. 67-68, ECF No. 34-1.) Hunt filed no complaints with the City of Baltimore or the police department, and he sought no treatment for either physical or mental injury. (*Id.* at 69.) Further, Hunt was not restrained and was free to leave after the citations were signed. (*Id.* at 66.) The officers' actions were routine measures under the circumstances, and the scope of the detention was not excessive.

Accordingly, this Court shall deny Hunt's motion to amend his complaint. *See Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 189 n. 4 (4th Cir. 2017) (district court was "well within its considerable discretion in denying [plaintiff's] motion to amend" where it concluded that summary judgment would be appropriate even with the proposed amendments); *Steinburg v. Chesterfield County Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008) (district court did not abuse its discretion by denying a motion to amend where granting the motion "would be an act of futility because [plaintiff's] proposed amended complaint would not survive summary judgment").

## CONCLUSION

For the foregoing reasons:

1. Defendant's Motion to Deem Requests for Admission be Admitted. (ECF No. 24) is DENIED AS MOOT.

2. Defendant's Motion for Partial Summary Judgment (ECF No. 25) is GRANTED.

13

3. Plaintiff's Motion to Amend Scheduling Order (ECF No. 28) is DENIED AS MOOT.

4. Defendant's Second Motion for Partial Summary Judgment (ECF No. 34) is GRANTED.

5. Plaintiff's Motion for Leave to Amend Complaint (ECF No. 41) is DENIED.

A separate Order follows.

Dated: July 1, 2019.

*/s/ Richard D. Bennett*
Richard D. Bennett
United States District Judge